Michael H. Pearson (CA SBN 277857)
  mpearson@pwfirm.com
**PEARSON WARSHAW, LLP**
15165 Ventura Boulevard, Suite 400
Sherman Oaks, CA 91403
Telephone: (818) 788-8300
Facsimile: (818) 788-8104

Melissa S. Weiner (*Pro Hac Vice* Forthcoming)
  mweiner@pwfirm.com
**PEARSON WARSHAW, LLP**
328 Barry Avenue South, Suite 200
Wayzata, MN 55391
Telephone: (612) 389-0600
Facsimile: (612) 389-0610

*Attorneys for Plaintiff and the Putative Class*

[Additional counsel listed on signature page]

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| SUE KIM, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TARGET CORPORATION,<br><br>Defendant. | CASE NO. 2:26-cv-02910<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

1053400.3

CLASS ACTION COMPLAINT

Plaintiff, Sue Kim, individually and on behalf of all others similarly situated, ("Plaintiff") by her undersigned counsel, brings this Class Action Complaint against Defendant Target Corporation, (hereinafter "Defendant" or "Target") and alleges upon information and personal knowledge as to her acts and experiences, and as to all other matters, upon information and belief, including investigation conducted by Plaintiff's attorneys.

## NATURE OF THE SUIT

1. In order to profit off of the sustainability conscious consumer, and to keep pace with consumer demands for sustainable seafood, Target engaged in a uniform advertising campaign to market itself as a sustainable food manufacturer, acknowledging sustainability as a purchase driver when selling seafood in a market composed of health and environmentally conscious consumers. Target's sustainable seafood campaign is most prominently represented in its labeling and marketing for its Good & Gather Tuna Products.[1]

2. Target is able to charge a premium for its Tuna Products as a result of its sustainable seafood marketing campaign—a message it communicates to consumers most prominently through a "Sustainably Caught" front-of-label representation on every Tuna Product package. Target's front-of-label sustainability representations are reinforced through additional back-of-label statements that the Tuna Products are "sustainable seafood" and are "wild caught using sustainable practices to help protect ocean resources for future generations to enjoy." Target's albacore Tuna Products represent that the tuna was "longline caught" and the non-albacore Tuna Products

---

[1] As described herein, "Tuna Products" or "Products" refer to Good & Gather brand portable pouch Chunk Light Tuna in Water, portable pouch Lemon Pepper Chunk Light Tuna, portable pouch Albacore Chunk White Tuna in Water, portable pouch Sweet and Spicy Chunk Light Tuna, tinned Solid White Albacore Tuna in Water and tinned Chunk Light Tuna in Water. The labels of the different varieties of Products are substantially similar in the representations made to consumers.

1053400.3

represent that the tuna was "purse seine caught." As detained herein, neither of these fishing methods are "sustainable," contrary to Defendant's uniform and overt label representations. The packaging further directs consumers to visit Target's website "to learn more about Target's Sustainable Seafood Commitment." (hereinafter and collectively, the "Sustainability Promise").

3.     Target's Tuna Product labeling also touts an adoption of sustainability standards of the Marine Stewardship Council ("MSC"), a company that Target partnered with to reinforce its sustainability commitment to consumers. Target's partnership with MSC is reinforced on the Tuna Product labeling through MSC's certification in the form of a blue stamp on each package (hereinafter, the "Blue Tick") to help sell the Tuna Products. All of Target's Tuna Products uniformly contain the above-listed sustainability statements:

 

1053400.3

CLASS ACTION COMPLAINT







1053400.3

CLASS ACTION COMPLAINT







1053400.3

CLASS ACTION COMPLAINT

4.    As alleged herein, despite its Sustainability Promise, Target sources its Tuna Products from fisheries that indiscriminately harm marine life and ocean ecosystems. Therefore, the Tuna Products sourced from these fisheries are not "sustainably caught."

5.    Target engaged in and crafted an intentional, uniform marketing campaign through the labeling of the Tuna Products, with the goal of delivering the uniform message to consumers that the Tuna Products are sustainably caught. As described herein, there is no question that Target's Sustainability Promise emanates from a deliberate and manufactured company policy to convince consumers "to be confident" that the Tuna Products are sustainably caught in a manner that "protect[s] ocean resources for future generations." As Target's senior vice president of corporate responsibility, Amanda Nusz, stated, "sustainability is part of Target's origin story."[2]

6.    When rolling out Target's "Target Forward" sustainability campaign, Ms. Nusz highlighted the importance of communicating Target's commitment to sustainability to consumers, "we want guests to think of Target first when they think of sustainability."[3]

7.    One component of this story is Target's alliance with MSC, a company that provides certification for allegedly sustainable, wild-caught seafood to companies that pay to use its Blue Tick. Indeed, Target touts its "partnership" with MSC, explaining that the partnership was intended to "encourage our guests to make the right decisions."[4]

---

[2] University of Minnesota, College of Design, Retail Connect 2023, "The Power of Sustainable Retail: How We Make A Difference," Nov. 9, 2023 at 19:27-42.

[3] "Introducing Target Forward – A New Era of Sustainability at Target," June 22, 2021, https://www.youtube.com/watch?v=OP8xJdCd1sA at 1:15-18.

[4]    https://www.latimes.com/archives/blogs/greenspace/story/2011-10-13/target-commits-to-100-sustainable-traceable-fish-by-2015#:~:text=In%202010%2C%20Target%20stopped%20selling,of%20water%20and%20spread%20disease.

1053400.3

CLASS ACTION COMPLAINT

8.     Target knows that conscientious consumers go shopping in search of sustainable products, which, in turn, drives market share. Reasonable consumers believe the fisheries used to catch the supposed "sustainably caught" Tuna Products are maintaining healthy fish populations and protecting ocean ecosystems. In fact, as described herein, Target and MSC's standards themselves promise such protections of the oceans and marine life. Target acknowledged that unsustainable fishing practices include overfishing, illegal, unreported and unregulated fishing and destructive fishing practices, yet it engaged in these very practices with respect to the Tuna Products bearing its Sustainability Promise.

9.     Sadly, despite its Sustainability Promise, Target does not promote the health and preservation of marine ecosystems—a basic pillar of sustainability. Instead, while profiting off of the false and misleading Sustainability Promise, Target conceals the use of harmful fishing practices used for its Seafood Products.

10.     The MSC certified fisheries that supply the fish for Target's Tuna Products do not provide the promised protections and, instead, engage in the following conduct, which indisputably *defies* Target's promise of sustainability: the suffocation and crushing of dolphins caught in fishing nets that are then hauled onto fishing boats while severely injured or dead; the torturously slow death of endangered sea turtles after getting caught on large hooks meant for haddock; and the entangling of critically endangered whales by fishing gear causing deep wounds and intense suffering.

11.     Despite representing to consumers that it has "full traceability" of the Tuna Products, Target turns a blind eye to the unsustainable fishing practices used in sourcing its Tuna Products and boldly uses the Sustainability Promise as proof of sustainable fishing methods. However, as Target knew, or should have known, its suppliers of the Tuna Products use industrial fishing methods that injure marine life as well as ocean habitats with destructive fishing.

12.     By failing to disclose that its Tuna Products are *unsustainably* caught

1053400.3

7

CLASS ACTION COMPLAINT

through use of fishing methods that harm ocean habitats and marine life, and representing that the Tuna Products are sustainably caught, Target induced reasonable consumers, including Plaintiff and Class members, to become unwitting participants in the very environmental crisis Plaintiff and Class members attempt to avoid by purchasing and paying a premium for Target's Tuna Products.

13.    Reasonable consumers generally understand seafood to be sustainably caught if the fishing methods utilized do not harm the marine ecosystem and promote marine health. It thus follows that the many *unsustainable* fishing practices described herein—which all indisputably harm marine life and ecosystems—would not be considered sustainable by the reasonable consumer.

14.    Reasonable consumers are not required to look beyond the label and marketing representations to understand a company's promises. Here, the label representations alone (which are reinforced with a prominent marketing campaign), confirm a reasonable consumer's basic expectations of sustainability in purchasing allegedly sustainable products.[5]

15.    Target's failure to ensure the truthfulness of the Sustainability Promise constitutes a violation of the explicit commitments it makes to consumers on each and every Tuna Product label. These baseless commitments include the assurance that Target has the proper, company-wide monitoring in place to verify the sustainability and traceability of the fishing practices used to catch the Tuna Products. Instead, Target knew, or should have known, that the fisheries sourcing its Tuna Products engage in unsustainable fishing methods, and also failed to ensure that the fisheries sourcing the Tuna Products only use sustainable means, making Target's Sustainability Promises meaningless.

---

[5] Marine Stewardship Council, *About the MSC*, https://www.msc.org/en-us/about-the-msc (highlighting protection of healthy fish populations, careful management of ecosystems, and adaptations to changing environmental circumstances).

1053400.3

CLASS ACTION COMPLAINT

16. Due to Target's deceptive and misleading labeling, Plaintiff and reasonable consumers purchased the Tuna Products based upon their reasonable belief and reliance on Target's Sustainability Promise. Had Plaintiff and Class members been aware that Target's Tuna Products are not sustainably caught, Plaintiff and Class members would not have purchased the Tuna Products or would have paid less for the Tuna Products. Accordingly, Plaintiff and Class members were injured by Target's deceptive business practices.

## JURISDICTION AND VENUE

17. This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2)(A), because there are 100 or more Class members; at least one Class member is a citizen of a state that is diverse from Defendant's citizenship; the matter in controversy exceeds $5 million, exclusive of interest and costs; and none of the exceptions under that subsection apply to this action.

18. This Court has personal jurisdiction over Defendant because Defendant operates, conducts and engages in substantial business in this judicial district; Defendant caused injury to persons within this state; and a substantial portion of the actions giving rise to the claims took place in this judicial district.

19. Venue is appropriate in this District pursuant to 28 U.S.C. § 1391(b)(2) because this is a judicial district in which a substantial part of the events giving rise to the claims occurred and Plaintiff resides in this judicial district.

## PARTIES

***Plaintiff Sue Kim***

20. Plaintiff Sue Kim resides in Cerritos, California and is a citizen of California. Throughout the relevant period, Plaintiff Kim purchased the Tuna Products at issue in this lawsuit and was exposed to and reasonably relied upon Target's sustainable representations, including Target's Sustainability Promise on the Tuna Product packaging. Specifically, Plaintiff Kim purchased Target's Good and

1053400.3

CLASS ACTION COMPLAINT

Gather brand portable pouch Chunk Light Tuna in Water and portable pouch Albacore Chunk White Tuna in Water from a local Cerritos, California Target store on June 28, 2025, for $0.99 and $1.99, respectively. Plaintiff Kim reviewed the Tuna Product packaging as a whole, including the front-label representations, and reasonably believed from these representations that the Tuna Products were sustainably caught, meaning they were caught in a manner that would not harm the marine ecosystem and would instead, promote marine health. In reasonable reliance on these representations, Plaintiff Kim paid an increased price for the Tuna Products, which were worth less than represented because the statements were not true and were highly misleading. The sustainability representations on the Tuna Product packaging, including those on the front label of the Tuna Products, were part of the basis of the bargain in that Plaintiff Kim attributed value to those representations and Plaintiff Kim would not have purchased the Tuna Products, or would not have purchased them on the same terms, if she knew the sustainability representations were untrue and/or misleading. Plaintiff Kim paid a price premium for empty promises of sustainability that Target did not keep.

21. Despite Defendant's misrepresentations, Plaintiff would purchase the Tuna Products, as labeled, if they were actually sustainably caught. Although Plaintiff regularly shops at Target, absent an injunction of Defendant's deceptive labeling and marketing, she will be unable to rely with confidence on Defendant's labeling and marketing of the Tuna Products in the future. Furthermore, while Plaintiff currently believes the Tuna Products' labeling and marketing is inaccurate, she is not involved in Defendant's business practices, and thus, she will not be able to determine whether the Tuna Products are actually sustainably caught in the future. This leaves doubt in her mind as to the possibility that at some point in the future the Tuna Products could be made in accordance with their sustainable representations. This uncertainty, coupled with her desire to purchase the Tuna Products, is an ongoing injury that can and would be rectified by an injunction enjoining Defendant from making the alleged

1053400.3

10
CLASS ACTION COMPLAINT

misleading representations. In addition, other Class members will continue to purchase the Tuna Products, reasonably but incorrectly, believing that they are caught utilizing sustainable fishing methods.

***Defendant Target Corporation***

22.    Target Corporation is incorporated in Minnesota with its principal place of business in Minneapolis, Minnesota. Target transacts, or transacted, business in this district, as well as throughout the United States and worldwide.

## FACTUAL BACKGROUND

**I.    Consumer Demand Drives Target's Aggressive Marketing as a Sustainable Food Retailer**

23.    Target endeavors to market itself as a sustainable food retailer through marketing campaigns on both the product and brand level in an attempt to profit off of the sustainably conscious consumer.[6]

24.    Confirming that sustainably caught seafood is a necessity to maintaining and increasing its market share, Target's Chairman and Chief Executive Officer, Brian Cornell, emphasized the importance of Target's sustainability marketing campaign stating, "We know sustainability is tied to business resiliency and growth, and that our size and scale can drive change that is good for all."[7]

25.    Target's Senior Vice President of Corporate Responsibility, Amanda Nusz, further emphasized that Target wants its customers to associate its brands with sustainability, stating, "We want our guests to turn to Target first when they think about sustainability. We know that the only way to make that possible is by putting both people and the planet at the center of our efforts, as we co-create with our guests,

---

[6] *See supra* note 3.

[7] Emanuela Kerencheva, *Target Focuses on Sustainable Brands, Environment and Equity with New Strategy*, published June 22, 2021.

1053400.3

our partners, and the communities we serve."[8]

26.   Consistent with Mr. Cornell's and Ms. Nusz's statements, consumers have ranked "no pollution to the environment" and "respect to fish welfare" as two of the four most essential elements of sustainable aquaculture.[9]

27.   Further, research demonstrates that claims related to sustainability are perceived by many consumers to mean "produced according to higher animal welfare standards," and that consumers associate the term "sustainable" with environment and atmosphere preservation (80%) and animal welfare and protection (76%).[10]

28.   Nearly half of millennials value factors like social impact and transparency over traditional value drivers like price.[11] In fact, a survey by Cargill found that 88% of Americans (and 93% of millennials) are willing to pay more for sustainable and responsibly sourced seafood.[12]

29.   Nielson's Global Corporate Sustainability Report found that 66% of consumers will spend more on a product if it comes from a sustainable brand, and that jumps to 73% among millennials. Therefore, companies have a financial incentive to

[8] *Id.*

[9] Chris Coulter, GlobeScan, *What Will the Future Hold for the Conscious Seafood Consumer?*, SeafoodSource, https://www.seafoodsource.com/videos/conference-recordings/what-will-the-future-hold-for-the-conscious-seafood-consumer, at 10:20.

[10] Krystle Morrison, *How Do Consumers Really Feel About Sustainability?*, Food Industry Executive (Jan. 25, 2022) https://foodindustryexecutive.com/2022/01/how-do-consumers-really-feel-about-sustainability/.

[11] Capitalizing on the shifting consumer food value equation. Rep. Deloitte Development, 2015, p. 2. Web. 24 Aug. 2017. http://www.gmaonline.org/filemanager/FMI_GMA_Report_rev_008.pdf#sthash.EmnFgZaj.dpuf.

[12] Cargill survey: *Americans Will Splurge on Sustainable Seafood*, Undercurrent News, 17 Aug. 2017. Web. 24 Aug. 2017. https://www.undercurrentnews.com/2017/08/17/cargill-survey-americans-will-splurge-onsustainable-seafood/.

1053400.3

be more socially conscious, or at least appear to be.[13]

30.    Moreover, a study on consumer perception of the phrase "ecologically sustainable" found that a majority of consumers "expect eco-labelled seafood to be harvested in a way that reduces impact on the fish population or the marine environment."[14]

31.    Target, as a sophisticated corporation, is well aware of this consumer demand. As reported by Target's vice president and head of enterprise sustainability, Agata Ramallo Garcia, in Target's 2024 Sustainability and Governance Report:

> We're applying decades of design expertise to reduce waste and meet growing consumer interest in more sustainable choices that don't sacrifice the value, quality, newness and joyful experience they expect from Target. We're activating an omnichannel experience to celebrate sustainable brands with our guests—and hear directly from them on ways we can continue to evolve our product offerings.[15]

32.    Indeed Ms. Ramallo Garcia highlighted Target marketed brands (like Good & Gather as a portfolio that is delivering on consumers' demand for sustainable products:

> Our owned brand portfolio has been bringing this idea [sustainability] to life in compelling ways, deepening our connection to guests and serving as incubators for sustainable innovation.[16]

---

[13] Deena Robinson, "What is Greenwashing?" EARTH.ORG, Nov. 13, 2022, https://earth.org/what-is-greenwashing/ (Mar. 21, 2023).

[14] Loren McClenachan *et al*., *Fair Trade Fish: Consumer Support for Broader Seafood Sustainability*, 17 FISH & FISHERIES 825 (Sept. 2016).

[15] Target 2024 Sustainability and Governance Report. https://corporate.target.com/getmedia/e2d80340-eb9f-43a7-a84c-219280aa5ba4/2024-Sustainability-and-Governance-Report.pdf at p. 3.

[16] *Id*.

1053400.3

## II. Target's Fisheries and Suppliers of the Tuna Products Utilize Unsustainable Fishing Methods and Lack the Traceability Necessary to Substantiate Target's Sustainability Promise

33. Contrary to the Sustainability Promise marketed by Target to profit off of the sustainably conscious consumer, Target's Tuna Product suppliers utilize harmful fishing techniques that injure marine wildlife and the marine ecosystem. Furthermore, Target's Tuna Product suppliers lack the traceability and supply chain transparency required to make such sustainability claims.

34. Sustainable fishing indisputably "guarantees there will be populations of ocean and freshwater wildlife in the future."[17] As seafood demand has grown and advances in technology expanded, certain fishing practices deplete fish populations, leading to unsustainable fishing practices.[18]

35. The MSC Code for Target's Tuna Products is MSC-C-53198, which is associated with The Tuna Store LLC.[19] The Tuna Store LLC is part of the Tri Marine Group (a U.S. corporation),[20] which is owned by the Bolton group (an Italian corporation).[21] The Bolton Group is a massive, global fishing conglomerate. Greenpeace has issued reports on the failures of the Bolton Group to meet its marketed

---

[17] Sustainable Fishing, National Geographic Society, https://education.nationalgeographic.org/resource/sustainable-fishing. (last visited July 9, 2025).

[18] Id.

[19] FishChoice, The Tuna Store LLC, https://fishchoice.com/business/the-tuna-store-llc-0 (last visited July 9, 2025).

[20] Id.

[21] Cliff White, Tri Marine sold to Bolton Group, published July 8, 2019, https://www.seafoodsource.com/news/business-finance/tri-marine-sold-to-bolton-group.

1053400.3

CLASS ACTION COMPLAINT

sustainability goals.[22]

***A. The Unsustainable Fishing Methods Utilized by Target's Suppliers Indisputably Cause Damage to the Marine Ecosystem and Wildlife Through Bycatch, Overfishing and Ghost Gear***

36.   Target's Tuna Products are caught by fisheries that utilize the following large scale fishing methods, that indisputably harm the oceans and marine life through bycatch, overfishing, and ghost gear.

- Purse seines: These large nets encircle schools of fish and indiscriminately capture all marine life within the net severely injuring and killing seals, sharks and endangered sea turtles.

- Longlines: These heavy-duty fishing lines that are miles long with thousands of harmful hooks catch target fish but also nontargeted species such as endangered sea turtles that slowly drown.

37.   In fact, Target deceptively highlights these fishing methods on the labels of the Products in a manner that leads consumers to believe that these fishing methods are sustainable, when in reality, these large scale fishing methods are anything but sustainable and indisputably harm marine wildlife and ecosystems.

38.   "Bycatch" refers to the unintentional hooking or ensnaring of marine life.[23] A report from the National Resources Defense Council states that scientists estimate over 650,000 marine mammals are killed or seriously injected every year as

---

[22] *See, e.g.*, https://www.greenpeace.org/international/press-release/47753/bolton-food-first-year-assessment-shows-stronger-efforts-needed-to-improve-its-environmental-and-human-rights-performance-greenpeace/.

[23]   Ecological   Damage   Caused   by   Driftnets,   JRANK, https://science.jrank.org/pages/2162/DriftNet.html#:~:text=Drift%20nets%20are%20used%20to,dead%2C%20back%20to%20the%20ocean.

1053400.3

a result of incidental bycatch.[24]

39.     Despite this already staggering number, the figure is likely even higher since commercial fishermen are incentivized to underreport bycatch, which is facilitated by rampant lack of accountability and widespread unreliable reporting on bycatch. In fact, in 2005, less than half of the fishing vessels around the world recorded quantitative statistics on annual bycatch.[25]

40.     Target likely ignores bycatch levels because, according to the fisheries' certifying body, MSC, the levels are arbitrarily considered "sustainable."[26]

41.     The fisheries purport to have observers on board that monitor bycatch. However, there is evidence that observers' reports about bycatch, shark finning and observer bribery are being ignored.[27] Such evidence includes images of shark finning and the capturing of whale sharks, giant rays and other species of concern.[28] More graphically, fishers have left marine animals to die on the decks or butchered them in the nets while they were still alive.[29]

42.     "Overfishing" is the removal of a species of fish from a body of water at

---

[24] Net Loss: The Killing of Marine Mammals in Foreign Fisheries, National Resources Defense Council (Jan. 2014), https://www.nrdc.org/sites/default/files/mammals-foreign-fisheriesreport.pdf.

[25] Amanda Keledjian, et al., Wasted Catch: Unsolved Problems in U.S. Fisheries, OCEANA (2014), available at https://oceana.org/reports/wasted-catch-unsolved-problems-us-fisheries/

[26] SEASPIRACY (Ali Tabrizi dir., 2021).

[27] J Schwenzfeier, et al., Slipping Through the Net, Reported but Ignored: Infringements in the MSC Tuna Fisheries of the Western and Central Pacific, Shark Guardian (May 2022).

[28] Id.

[29] Id.

1053400.3

CLASS ACTION COMPLAINT

a rate greater than the species can replenish its population.[30] According to the Food and Agriculture Organization of the United Nations, the number of overfished stocks globally has tripled in half a century and today fully one-third of the world's assessed fisheries are currently pushed beyond their biological limits.[31]

43.    In addition, Target's Tuna Product suppliers are not required to provide effective strategies for mitigating ghost gear. Abandoned, lost or discarded fishing gear, also known as "ghost gear," is the deadliest form of plastic in the ocean and it greatly impacts marine life populations, including whales, dolphins, sharks and sea turtles.[32]

44.    The fisheries that supply Target's Tuna Products catch fish and other types of seafood using purse seiners and longlines.[33] As described herein, Target's Sustainability Promise is therefore deceptive, and no reasonable consumer would deem these fishing practices sustainable if they knew of the harm they cause the marine wildlife and ecosystem.

45.    Expert Kate O'Connell, a marine wildlife consultant for the Animal Welfare Institute stated, "We're talking millions of lines, placed in the water every year. These animals are running the gauntlet—and it's getting harder and harder for them to survive."[34] Over a right whale's lifetime, 85% are expected to get entangled

---

[30] World Wildlife Fund (WWF), *Threats: Overfishing* https://www.worldwildlife.org/threats/overfishing

[31] Food and Agriculture Organization of the United Nations, *The State of World Fisheries and Aquaculture 2022*, https://www.fao.org/3/cc0461en/online/sofia/2022/status-of-fishery-resources.html

[32] Ingrid Giskes, *Ghost Gear Prevention in the Seafood Industry*, Ocean Conservancy (Feb. 2, 2021) https://oceanconservancy.org/blog/2021/02/02/ghost-gear-prevention-seafood-industry/

[33] *See, e.g.*, https://fishchoice.com/business/the-tuna-store-llc-0

[34] Karen McVeigh, *Blue Ticked Off: The Controversy Over the MSC Fish*

1053400.3

in gear.[35]

46. A <u>purse seiner</u> is a large net that hangs down 650 feet deep from a floating circular top line as wide as a mile in diameter. The net is used to encircle a school of fish. The bottom is drawn tight to prevent fish from escaping and the net is hauled on board or dragged alongside the vessel.

47. Target's Tuna Product suppliers use purse seiners, a non-selective method of catching tuna found on Target's shelves.[36] Once a purse seiner is set, all marine life within the net is captured, including marine mammals and sea turtles.[37] These non-target species are called bycatch. Most marine life in the purse seiner is crushed by the weight of other catch that has accumulated on top of them. The various forms of marine life caught in the net become stressed and injured, and often times they are thrown back into the ocean dead or as they are dying.[38]

48. Target's albacore Tuna Product suppliers use longlines.[39] Besides mature, adult tuna, the hooks also capture and mortally wound sea turtles, sharks and juvenile tunas.[40] Longline bycatch that are caught and discarded face a mortality rate of up to 50%.[41] Hundreds of thousands of endangered loggerhead turtles and critically

---

*'Ecolabel,'* The Guardian (July 26, 2021) https://www.theguardian.com/environment/2021/jul/26/blue-ticked-off-the-controversy-over-the-msc-fish-ecolabel

[35] *Id*.

[36] FishChoice, *supra* n.19.

[37] NOAA, *Fishing Gear: Purse Seines*, https://www.fisheries.noaa.gov/national/bycatch/fishing-gear-purse-seines

[38] *Id*.

[39] FishChoice, *supra* n.19.

[40] WWF, *Bycatch*, *supra* n.30.

[41] Fran Wijen and Mireille Chiroleu-Assouline, *Controversy Over Voluntary Environmental Standards: A Socioeconomic Analysis of the Marine Stewardship*

1053400.3

CLASS ACTION COMPLAINT

endangered leatherback turtles drown annually on longlines.[42]

49.     Ironically, Target claims that its efforts for more sustainable sourcing of seafood and support of ocean health specifically focus on the very issues that are caused by its Tuna Product suppliers. Nevertheless, Target's Tuna Products prominently market its Sustainability Promise.

50.     A reasonable consumer who purchases Tuna Products with the Sustainability Promise would not expect the fishing practices described herein to be implicated in the harvesting of tuna.

**B. Target's Seafood Suppliers Lack the Transparency and Traceability Necessary to Support the Sustainability Promise**

51.     Even more, despite Target's marketing of its Sustainability Promise, Target's suppliers lack the transparency necessary to support such a claim, furthering Target's deceptive conduct.

52.     Traceability is the guarantee that both food retailers and consumers need before any sustainability claims can truly be accepted and verified, and in many ways, it is the glue that holds the responsibly caught Tuna Products' supply chains together.[43]

53.     Traceability and supply chain transparency is vital to verify sustainability and demonstrate that a product is ethically and sustainably caught.[44] In

---

*Council,* Sage Publications, Inc., Vol 32, No. 2 (June 2019) https://journals.sagepub.com/doi/10.1177/1086026619831449

[42] WWF, *Bycatch, supra* n.30.

[43] Greenpeace, *Sea of Distress 2017,* https://www.greenpeace.org/usa/wp-content/uploads/2017/10/Sea-of-Distress-2017.pdf

[44]     WWF,     *Traceability     in     Farmed     Shrimp* https://seafoodsustainability.org/aquaculture/farmedshrimp/traceability/#:~:text=Without%20visibility%2C%20it%20is%20impossible,is%20ethically %20and%20sustainably%20sourced

1053400.3

the seafood sector, effective traceability can be defined as the ability to identify the origin of the product and sources of input materials, as well as the ability to conduct backward and forward tracking using recorded information to determine the specific location and history of the product.[45]

54. However, effective traceability can only be accomplished if neutral observers are adequately reporting unstainable fishing practices. As described herein, Target knew, or should have known, that the observers utilized by Target's Tuna Product suppliers, fail to adequately report and record bycatch and other dangers or harm to marine wildlife and ecosystems.

55. Target acknowledges the importance of transparency and traceability in advertising its Tuna Products. Target's "Commitment to Sustainable Seafood" states that "Target recognizes that traceability in seafood supply chains is important for verifying that our seafood comes from sources that meet our sustainable seafood commitment. Target works towards industry best practices for traceability" for the purpose of empowering its customers to "be confident that the seafood they buy at Target is wild caught or farmed using sustainable practices that help protect ocean resources for future generations."[46]

56. As noticed by the Association for Professional Observers, "broad assessments are made that a fishery is sustainable if it is MSC certified or has some other eco-label. This is a public deception. To us, these milestones are a complete farce because there are no observer protections embedded in the requirements of any eco-certification. Furthermore, they mean nothing without transparency of observer

---

[45] Traceability - is your seafood really what is says on the tin?, ASC AQUA, https://www.ascaqua.org/aquaculture-explained/is-the-asc-a-credible-standard/traceability-is-your-seafood-really- what-it-says-on-the-tin/

[46] *See, e.g.*, https://corporate.target.com/sustainability-governance/responsible-resource-use/environmental-impact-products/commitment-to-sustainable-seafood

1053400.3

CLASS ACTION COMPLAINT

reports and continual public oversight."[47]

57.   Despite Target's bold claims of traceability, Target lacks criteria to protect observers or the metrics to gauge the effectiveness of observer program management, [48] as even Target admits.[49] Understanding trends in observer interference first comes with public transparency. If agencies are not systematically reporting incidents of interference publicly, consumers are simply being duped into believing the monitoring program is effective and the fish they eat are sustainable.[50]

58.   The lack of transparency, combined with the self-policing nature of the industry allows fish retailers like Target to reap the benefits of harmful fishing practices, all while falsely promising customers that its Tuna Products are sustainably caught.

III.   **Target Knew, or Should Have Known, that its Tuna Product Suppliers Did Not Comply with Target's Sustainability Promise**

59.   Despite Target's aggressive marketing campaign to profit off the sustainably conscious consumer of the Tuna Products, Target's Sustainability

---

[47] Mitchell, Elizabeth, *An Open Letter to Ocean Activists and Marine Conservation Groups from the Association for Professional Observers*, Nov. 18, 2016. https://apo-observers.s3.us-west-2.amazonaws.com/wp-content/uploads/2021/01/18102147/open-letter-ocean-activists-nov-2016.pdf.

[48] Association for Professional Observers (APO), *Observer Harassment*, https://www.apo-observers.org/observer-safety/harassment/

[49] https://corporate.target.com/sustainability-governance/responsible-resource-use/environmental-impact-products/commitment-to-sustainable-seafood ("At-sea transshipment is a common practice in tuna fisheries often used for the purpose of increasing the operational efficiency of fishing by reducing fuel and supply costs. While a legal practice, it can hide unsustainable, unethical or illegal activities such as overfishing or labor abuses. Transshipment often occurs in the waters of developing coastal states or on the high seas where there is little capacity for monitoring and oversight, further elevating the risks.").

[50] *Id*.

1053400.3

Promise lacks any merit and only serves to deceive Plaintiff and other reasonable consumers into purchasing Tuna Products that are unsustainably caught through the use of fishing methods that harm ocean habitats and marine life, forcing those consumers into becoming unwitting participants in the very environmental crisis they attempt to avoid by purchasing and paying a premium for Target's Tuna Products.

60.   Target seeks to have it both ways: pleading ignorance to the harmful practices of the fisheries that source the Tuna Products, while also using the Sustainability Promise to promote the sale of the Tuna Products.

61.   To convince the sustainably conscious consumer of its sustainability goals, Target represents in its marketing materials that it has traceability and oversight of its suppliers. To support these statements, Target requires its vendors to adhere to best practices, including monitoring and oversight, transparency and worker protections.[51]

62.   According to Target's Responsible Sourcing and Sustainability Audit Program, "The risk-based program assesses manufacturing location conditions, worker treatment and compensation, hiring processes, environmental practices and compliance with applicable laws and Target's [Standards of Vendor Engagement]. All disclosed manufacturing locations must conduct an audit that is approved as part of Target's industry-aligned audit protocol on a regular basis. Target maintains the right to conduct unannounced audits of any disclosed location."[52]

63.   As part of Target's commitment to "responsible and ethical business conduct" it requires all suppliers to follow Target's Standards of Vendor Engagement which includes among other things, a requirement that "Suppliers must have an

[51] *See, e.g.*, https://corporate.target.com/sustainability-governance/responsible-resource-use/environmental-impact-products/commitment-to-sustainable-seafood .

[52]   https://corporate.target.com/sustainability-governance/responsible-supply-chains/audit-program#:~:text=All%20factories/locations%20manufacturing%20or,Target's%20industry%20aligned%20audit%20protocol.

1053400.3

environmental management system that identifies, characterizes, and inventories all operational and production impacts to air emission, energy, water, and wastewater. Impacts must be measured and tracked."[53] However, as described herein, the fisheries that catch the tuna utilized in Target's Tuna Products fail to utilize sustainable fishing practices in violation of Target's own standards for suppliers and sustainability, therefore deceiving and misleading reasonable consumers.

64.    Target, through the Sustainability Promise that appears on all of its Tuna Products and pervasive throughout its marketing, consistently conveys to consumers that the fishing methods utilized to catch the Tuna Products protect fish stocks and other marine life.

65.    Target confirms the reasonable consumer's understanding of its Sustainability Promise on its website, stating that "Target values the richness of our natural world and seeks to protect ecosystems impacted by our operations. We aim to do our part to source products in a way that helps protect the planet and the communities that provide them" and that it will "continue to collaborate with supply chain partners and industry stakeholders to leverage our collective scale, influence and expertise to advance sustainable seafood."[54] Its Sustainability Promise is further reflected on the Tuna Products' packaging that claim Target is "using sustainable practices to help protect ocean resources" and directs consumers to the Target website "to see our full seafood sustainability commitment." Thus, Target's definition is directly in line with that of reasonable consumers: "sustainable" fishing practices do not harm the marine ecosystem and promote marine health.

66.    In reality, Target knew, or should have known, the Tuna Products are caught using unsustainable fishing practices that harm fish populations and kill

---

[53]    https://corporate.target.com/sustainability-governance/responsible-supply-chains/suppliers/standards-of-vendor-engagement.

[54] *Id*.

1053400.3

marine life, such as dolphins, whales and turtles, some of which are endangered.

67.    Federal guidance and consumer research demonstrate that sustainability claims, like those proffered by Target, suggest to reasonable consumers that the Tuna Products are caught through sustainable methods and in accordance with fishing techniques that promote healthy ecosystems. MSC itself highlights maintenance of healthy fish populations and careful management of ecosystems as pillars of sustainable fishing practices.[55] It thus follows that no reasonable consumer would consider fishing with a purse seiner and/or longlines to be "sustainable."

68.    The Federal Trade Commission's ("FTC") Green Guides ("Green Guides") were codified to "help marketers avoid making environmental marketing claims that are unfair or deceptive" based on its "views on how reasonable consumers likely interpret [those] claims."[56] The Green Guides are strong indicators of a reasonable consumer's understanding of sustainability practices.

69.    The FTC determined that "[u]nqualified general environmental benefit claims . . . likely convey that the product . . . has specific and far-reaching environmental benefits and may convey that the item . . . has no negative environmental impact."[57] In fact, the FTC has warned that "[m]arketers still are responsible for substantiating consumers' reasonable understanding of these claims."[58]

---

[55] Marine Stewardship Council, *What is the MSC?,* https://www.msc.org/en-us/about-the-msc.

[56] FTC Green Guides, 16 C.F.R. §§ 260.1(a), (d) (2012).

[57] *FTC Sends Warning Letters to Companies Regarding Diamond Ad Disclosures*, Federal Trade Commission (Apr. 2, 2019), https://www.ftc.gov/news-events/news/press-releases/2019/04/ftc-sends-warning-letters-companies-regarding-diamond-ad-disclosures; *see* also FTC Green Guides, 16 C.F.R. § 260.4(b) (2012).

[58] FTC, The Green Guides, *Statement of Basis and Purpose*, p. 258 (Oct. 1, 2012) https://bit.ly/2TQ7GL9

1053400.3

70.    Target's Commitment to Sustainable Seafood acknowledges this responsibility: "We want our guests to be confident that the seafood they buy at Target is wild caught or farmed using sustainable practices that help protect ocean resources for future generations. Due to the environmental and social risks in the seafood industry, Target engages with vendors and participates in initiatives to increase the sustainability of our seafood supply chain."[59]

71.    Despite the FTC Green Guides, the unsustainable fishing practices of its suppliers and the well-documented failures of Target and MSC to enforce sustainability standards, discussed herein, all of Target's Tuna Products include representations of the Sustainability Promise on the front of the packaging where it cannot be missed by consumers.

72.    Target's Sustainability Promise on the front-label of the Tuna Products misleads the reasonable consumer into believing that they are purchasing a sustainably caught Product. Contrary to the representations, the Tuna Products are not sustainably caught, leaving Plaintiff and Class members having paid a premium for Tuna Products that failed to provide the promised benefits.

73.    As described herein, the fisheries that supply the Tuna Products to Target engage in unsustainable fishing practices that injure marine wildlife and the marine ecosystem.

74.    Experts are concerned, and Target is aware, or should have been aware, of this concern, that the rapid growth of the MSC and the inherent conflict of interest involved with its operations have influenced the MSC to compromise its objective.

75.    Globally, researchers, academics and scientists have criticized the MSC for disregarding its own standards and compromising its credibility.

76.    Richard Page, a Greenpeace Oceans Campaigner, said decisions to

---

[59]    https://corporate.target.com/sustainability-governance/responsible-resource-use/environmental-impact-products/commitment-to-sustainable-seafood

1053400.3

25

CLASS ACTION COMPLAINT

certify some fisheries "seriously undermine" the MSC's credibility. "I will go as far as to say consumers are being duped. They think they are buying fish that are sustainable and can eat them with a clean conscience."[60]

77.    Rory Crawford, the MSC's own advisory council and a member of Bird Life International, conducted a study of twenty-three fisheries in 2019 and found that only three were actively working to monitor and minimize bycatch. "Consumers cannot be fully confident that certified fish comes without impacts on non-target species, from sharks to seabirds to whales."[61]

78.    Gerry Leape, an Ocean Specialist at the Pew Environment Group, supported the MSC for more than a decade as a member of its advisory Stakeholder Council, but is now concerned, stating, "We would prefer they didn't use the word *sustainable*." He and other critics say that the MSC system has been certifying fisheries despite evidence that the fish stocks are in trouble or that the fishing is harming the environment.[62]

79.    Jim Barnes, director of the Antarctic and Southern Ocean Coalition, worries the MSC is straying from its mission and needs an overhaul.[63]

80.    Chris Pincetich, a marine biologist with the Turtle Island Restoration Network, said, "The MSC has rushed to accept applications from hundreds of fisheries around the globe in order to grow their business and network. Many of those

---

[60] Richa Syal, *License to Krill: The Destructive Demand for a 'Better' Fish Oil*, The Guardian (Sept. 7, 2021), https://www.theguardian.com/environment/2021/sep/07/license-to-krill-the-destructive-demand-for-a-better-fish-oil.

[61] McVeigh, *supra* n.34.

[62] Daniel Zwerdling & Margot Williams, *Is Sustainable-Labeled Seafood Really Sustainable?* NPR (Feb 11, 2013), https://www.npr.org/2013/02/11/171376509/is-sustainable-labeled-seafood-really-sustainable?t=1617527311964

[63] Zwerdling & Williams, *supra* n.62.

1053400.3

are actually viewed by scientists as unsustainable. They should really take a closer look before they even engage with those fisheries."[64]

81.     The MSC is, of course, out to make a profit. It charges retailers royalties starting at 0.5% of the net wholesale value of seafood sold for using its label.[65] Therefore, it naturally follows that the more fish and seafood that the MSC's customers sell, the more money the MSC earns.

82.     The MSC has certified more than 30,000 seafood products globally.[66] Approximately 80% of the organization's income comes from licensing its logo on seafood products.[67] Fisheries that seek certification and the use of the MSC's "ecolabel" pay $20,000 to $100,000 USD.[68]

83.     Despite countless fisheries employing harmful practices that deplete fish populations, destroy habitats and harm marine life, there have only been a handful that have ever been denied certification in over 20 years.[69]

84.     Professor Callum Roberts, a marine biologist in the Department of Environment and Geography, University of York, and Amy Hammond, Head of Research at Seahorse Environmental Communications, express the perception that "the bar has been dropped unacceptably low in order to satisfy ever-growing market

---

[64] Syal, *supra* n.60.

[65]   Marine   Stewardship   Council,   *Apply   to   Use   the   MSC   Label*, https://www.msc.org/for-business/use-the-blue-msc-label/apply

[66]   Marine   Stewardship   Council,   *Buy   Sustainable   Seafood*, https://www.msc.org/what-you-can-do/buy-sustainable-seafood

[67] *SEASPIRACY*, *supra* n.26.

[68] David Jolly, *Krill Harvest Certification Upsets Conservationists*, The New York Times, Aug. 8, 2022, www.nytimes.com/2010/06/23/science/earth/23krill.html

[69] *SEASPIRACY*, *supra* n.26.

1053400.3

demand by getting more (generally large industrial) fisheries into the program."[70]

85. The MSC defines sustainable seafood as seafood that comes from fisheries that catch fish in ways that ensure the long-term health of a stock or species and the wellbeing of the ocean.[71] Individual fishers or vessels cannot be MSC certified—only fishing operations.[72] According to the MSC's website, there are currently more than 400 wild capture fisheries certified to this standard.[73]

86. MSC's Fishery Standards require:

- "Fishing must be at a level that ensures it can continue indefinitely and the fish population can remain productive and healthy."

- "Fishing activity must be managed carefully so that other species and habitats within the ecosystem remain healthy."

- "[F]isheries must comply with relevant laws and be able to adapt to changing environmental circumstances."

87. However, the only fishing techniques that disqualify a fishery from MSC certification is if it utilizes fishing with poisons or explosives.[74]

88. The MSC certifies large scale fisheries—most of which use harmful fishing techniques, such as purse seiners and longlines—that account for 93% of

---

[70] Amy Hammond & Callum Roberts, *Why the Marine Stewardship Council Needs an Independent Review*, ETHICAL CONSUMER (July 31, 2019.) https://www.ethicalconsumer.org/ food-drink/why-marine-stewardship-council-needs-independent-review.

[71] Marine Stewardship Council, *What Does the Blue MSC Label Mean?* www.msc.org/what-we-are-doing/our-approach/what-does-the-blue-msc-label-mean

[72] *Id.*

[73] *Id.*

[74] MSC Fishery Assessment Methodology and Guidance to Certification Bodies, p. 10, para. 2.6; Greenpeace, *Assessment of the Marine Stewardship Council (MSC) Fisheries Certification Programme*. June 2009, https://www.greenpeace.org/usa/wp-content/uploads/legacy/Global/usa/planet3/PDFs/assessment-of-the-msc.pdf.

1053400.3

MSC's certified catch; the remaining 7% of catch comes from small fisheries.[75] The fishing methods used by these fisheries cause overfishing and indiscriminately capture non-target species.

89. Target knows, or should know, that MSC violates its own fishery standards as well as Target's Sustainability Promise, Target's Standards for Vendor Engagement and Target's Commitment to Sustainable Seafood. The fisheries that supply Target do not consider long term health of fish populations, do not consider the health of other species and do not consider the protection of ecosystems. Furthermore, MSC does not take changing environmental circumstances into account.

90. In purchasing Target's Tuna Products with the Sustainability Promise, reasonable consumers expect that Target would maintain the proper, company-wide monitoring to follow the explicit promises it makes regarding the alleged sustainable fishing practices used to catch the Tuna Products. Target's failure to investigate its suppliers despite the fisheries' blatant unsustainable practices violates the explicit Sustainability Promises Target makes to consumers.

91. Target has an obligation to consumers to ensure that its prominent Sustainability Promise followed a reasonable consumer's expectation of sustainable tuna. Certainly, Target knew it could not uphold that promise because it admits to using large scale fishing methods that indisputably harm the oceans and marine life. As described herein, no reasonable consumer would deem these fishing practices sustainable due to the severe harm they cause to endangered marine mammals, seabirds, and marine ecosystems.

---

[75] Frederic Le Manach, *et al.*, *Small is Beautiful, but Large is Certified: A Comparison between Fisheries the Marine Stewardship Council (MSC) Features in its Promotional Materials and MSC- Certified Fisheries,* (May 4, 2020); Marine Stewardship Council, *Fishing Methods, and Gear Types,* https://www.msc.org/what-we-are-doing/our-approach/fishing-methods-and-gear-types

1053400.3

CLASS ACTION COMPLAINT

**IV.     Plaintiff and Class Members Relied Upon Target's Deceptive Sustainability Promise in their Purchase of the Tuna Products at a Premium**

92.     Target's Sustainability Promise deceives and/or is likely to deceive the public. Reasonable consumers were, and continue to be, deceived into believing that Target's Tuna Products are caught using sustainable fishing practices. Moreover, reasonable consumers were, and continue to be, deceived into believing that Target's Tuna Products are caught in compliance with Target's sustainability marketing, MSC's Fishery Standards and other requirements.

93.     Consumers are unable to discover the true nature of Target's Tuna Products from the Tuna Products' packaging. Ordinary consumers do not have sufficient knowledge about the commercial fishing industry to know or ascertain that Target's Tuna Products are caught using unsustainable practices that effectively destroy marine ecosystems and deplete fish stocks. Likewise, ordinary consumers do not have sufficient knowledge about Target's practices to know or ascertain whether Target actually complies with Target's Corporate Social Responsibility campaign, MSC's Fishery Standards and other requirements.

94.     Target knew, or should have known, that its Tuna Products are not caught sustainably. In making false, deceptive and misleading representations, Target intended to deceive reasonable consumers into buying and/or paying more for products marketed with a Sustainability Promise.

95.     Target's material misrepresentations and omissions set forth in this Complaint were disseminated uniformly to Plaintiff and all Class members through product packaging and labeling, exposing Plaintiff and all Class members to Target's false, deceptive and misleading advertising and unfair, unlawful and fraudulent business practices.

96.     When purchasing Target's Tuna Products, Plaintiff relied upon Target's misrepresentations and omissions. Had Target not made a Sustainability Promise that

1053400.3

30

CLASS ACTION COMPLAINT

was false, deceptive and misleading, reasonable consumers would not have been willing to pay a price premium for the Tuna Products or would not have purchased the Tuna Products at all.

97. Plaintiff was injured at the time of purchase as she would not have purchased the Tuna Products on the same terms or for the same price had Target made truthful advertising statements and disclosed material information concerning the fishing practices involved with its Tuna Products, including its failure to comply with Target's sustainability marketing, MSC's Fishery Standards and other standards.

98. Target's material misrepresentations and omissions set forth in this Complaint induced Plaintiff into purchasing Target's Tuna Products, resulting in remittance from Plaintiff to the benefit of Target. Had Target advertised its Tuna Products truthfully, Plaintiff would not have purchased the Tuna Products on the same terms or for the same price.

99. Plaintiff and Class members were, and will continue to be deceived or misled, by Target's false and misleading misrepresentations and omissions concerning the fishing practices used to catch its Tuna Products.

100. Plaintiff and Class members are reasonable consumers who were injured by purchasing Target's Tuna Products. Because of Target's material misrepresentations and omissions in its statements and advertisements concerning its Tuna Products, including on product packaging and labeling, Plaintiff and Class members were harmed at the time of purchase.

101. Target's misrepresentations and omissions were material factors in influencing Plaintiff's and Class members' decisions to purchase Target's Tuna Products.

102. Target's conduct injured Plaintiff and Class members because Target's Tuna Products are not sustainably caught, and do not comply with Target's sustainability marketing or MSC's own standards. Rather, the fishing practices of Target's suppliers are known to be destructive, and Target failed to conspicuously

1053400.3

31

CLASS ACTION COMPLAINT

disclose this reality to Plaintiff and Class members.

103. Target continues to engage in the unlawful acts and practices set forth in this Complaint.

104. Unless enjoined, Target's unlawful acts and practices described in this Complaint will continue.

## TOLLING AND ESTOPPEL OF STATUTE OF LIMITATIONS

105. For years Defendant had actual knowledge that the Tuna Products are not sustainably caught.

106. Defendant has a duty to accurately represent the unsustainable sourcing of the Tuna Products. Yet despite its duty and knowledge, Defendant misrepresented that fact.

107. Defendant made, and continues to make, affirmative misrepresentations to consumers to promote the sale of the Tuna Products, including that the Tuna Products are sustainably caught.

108. Defendant misrepresented material facts that are important to Plaintiff and Class members in deciding whether to purchase the Tuna Products. Defendant's misrepresentation was knowing, and it intended to, and did, deceive reasonable consumers, including Plaintiff and Class members.

109. As a result, Plaintiff and Class members reasonably relied upon Defendant's affirmative misrepresentations of these material facts and suffered injury as a proximate result of that justifiable reliance.

110. The unsustainable fishing methods utilized to catch the Tuna Products are not reasonably detectible to Plaintiff and Class members.

111. At all times, Defendant actively and intentionally misrepresented the sustainability of its Tuna Products and failed to inform Plaintiff and Class members of the unsustainable fishing methods utilized to catch the Tuna Products. Plaintiff's and Class members' lack of awareness was thus not attributable to a lack of diligence on their part.

1053400.3

112.   The statements, words and acts by Defendant were made for the purpose of misrepresenting the truth that the Tuna Products were not sustainably caught.

113.   Defendant misrepresented the sustainability of the Tuna Products for the purpose of delaying Plaintiff and Class members from filing a complaint on their causes of action.

114.   Due to Defendant's active misrepresentation to Plaintiff and Class members of the sustainability of the Tuna Products, any and all applicable statutes of limitations that may otherwise be applicable to the allegations are tolled. Moreover, Defendant is estopped from relying on any statute of limitations in light of its active misrepresentation regarding the sustainability of the Tuna Products.

115.   Furthermore, the causes of action alleged herein did not occur until Plaintiff and Class members discovered the unsustainable fishing methods utilized to catch the Tuna Products. Plaintiff and Class members had no realistic ability to discern that the Tuna Products do not possess the alleged sustainability qualities until they learned the Tuna Products were caught utilizing unsustainable fishing methods that harm marine wildlife and the marine ecosystem. In either event, Plaintiff and Class members were hampered in their ability to discover their causes of action because of Defendant's active misrepresentation regarding the true nature of its Tuna Products.

## FED. R. CIV. P. 9(b) ALLEGATIONS

116.   Although Defendant is in the best position to know what content it placed on its Tuna Product packaging and on its website(s) during the relevant timeframe, and the knowledge it had regarding the sustainability qualities of the Tuna Products, to the extent necessary, Plaintiff satisfies the requirements of Rule 9(b) by alleging the following facts with particularity:

117.   **WHO**: Defendant made material misrepresentations of fact through its Tuna Product packaging and on its website(s) regarding the sustainability of the Tuna Products.

1053400.3

118.    **WHAT**: Defendant's conduct was, and continues to be, fraudulent because it misrepresented the sustainability of the Tuna Products, a fact that Defendant knew, or should have known, to be true, but nonetheless marketed, and continues to market, the Product sustainably caught. Thus, Defendant's conduct deceived Plaintiff and Class members into believing that the Tuna Products are sustainably caught. Defendant knew, or should have known, this information is material to reasonable consumers—including Plaintiff and Class members—in making their purchasing decisions, yet it continued to pervasively market and label its Tuna Products as sustainably caught.

119.    **WHEN**: Defendant made material misrepresentations during the putative class periods and at the time Plaintiff and Class members purchased the Tuna Products, prior to and at the time Plaintiff and Class members made claims after realizing the Tuna Products were not sustainably caught and continuously throughout the applicable class periods.

120.    **WHERE**: Defendant's marketing message was uniform and pervasive, carried through material misrepresentations on the Tuna Product's labeling and packaging.

121.    **HOW**: Defendant made material misrepresentations of material facts regarding the Tuna Products, including, but not limited to, the amount of sustainability of the Tuna Products.

122.    **WHY**: Defendant made the material misrepresentations detailed herein for the express purpose of inducing Plaintiff, Class members and all reasonable consumers to purchase and/or pay a premium price for the Tuna Products, the effect of which was Defendant profited by selling the Tuna Products to many thousands of consumers.

123.    **INJURY**: Plaintiff and Class members purchased, paid a premium or otherwise paid more for the Tuna Products when they otherwise would not have absent Defendant's misrepresentations.

1053400.3

## CLASS ACTION DEFINITIONS & ALLEGATIONS

124. As detailed at length in this Complaint, Target orchestrated deceptive marketing, advertisement and labeling practices. Target's customers were uniformly impacted by and exposed to this misconduct. Accordingly, this Complaint is uniquely situated for class-wide resolution.

125. Plaintiff Kim brings this action individually and as a representative of all those similarly situated, pursuant to Fed. R. Civ. P. 23(a), 23(b)(2) and 23(b)(3), on behalf of herself and the members of the following proposed multi-state class ("Multi-State Consumer Protection Class"):[76]

> During the fullest period allowed by law, all persons who purchased a Tuna Product in the state of California or any state with similar laws,[77] within the applicable statute of limitations for personal use and not resale, until the date notice is disseminated.

---

[76] Unless otherwise specified, all references in this Complaint to "Classes" or the "Class" refer collectively to the Multi-State Consumer Protection Class and California Class.

[77] While discovery may alter the following, Plaintiff asserts that the other states with similar consumer fraud laws under the facts of this case include, but are not limited to: Alaska (AS §§ 45.50.471, *et seq*.), Arkansas (Ark. Code §§ 4-88-101, *et seq*.), California (Cal. Bus. & Prof. Code §§ 17200, *et seq.*), Connecticut (Conn. Gen. Stat. §§ 42-110, *et seq*), Delaware (Del. Code tit. 6, §§ 2511, *et seq*.), District of Columbia (D.C. Code §§ 28-3901, *et seq*.), Florida (Fla. Stat. §§ 501.201, *et seq.*), Hawaii (Haw. Rev. Stat. §§ 480-1, *et seq*.), Illinois (815 ICLS §§ 501/1, *et seq.*), Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq.*), Michigan (Mich. Comp. Law §§ 445.901, *et seq.*), Minnesota (Minn. Stat. §§ 325F.67, *et seq.*), Missouri (Mo. Rev. Stat. §§ 407.010, *et seq.*), New Jersey (N.J. Stat. §§ 56:8-1, *et seq.*), New York (N.Y. Gen. Bus. Law. §§ 349, *et seq*.; §§ 350, *et seq*.), Rhode Island (R.I. Gen. Laws §§ 6-13.1-1, *et seq.*), Vermont (Vt. Stat. tit. 9, §§ 2451, *et seq*.), Washington (Wash. Rev. Code §§ 19.86.010, *et seq.*), and Wisconsin (Wis. Stat. §§ 100.18, *et seq.*). *See Langan v. Johnson & Johnson Consumer Companies, Inc.*, 897 F.3d 88, 96 (2d Cir. 2018); *Mancuso v. RFA Brands, LLC*, 454 F. Supp. 3d 197, 201, 204 (W.D.N.Y. 2020); *see also Benson v. Newell Brands, Inc.*, No. 19 C 6836, 2021 WL 5321510, \*9-10 (N.D. Ill. Nov. 16, 2021) (certifying a similar multi-state consumer protection class).

1053400.3

126. Plaintiff further brings this action individually and as a representative of all those similarly situated, pursuant to Fed. R. Civ. P. 23(a), 23(b)(2) and 23(b)(3) on behalf of herself and the members of the following class ("California Class"):

> During the fullest period allowed by law, all persons who purchased a Tuna Product in the State of California, within the applicable statute of limitations for personal use and not resale, until the date notice is disseminated.

127. Members of the Multi-State Consumer Protection Class and California Class are referred to collectively as the "Class members." Specifically excluded from the Classes are: (1) Defendant, any entity in which Defendant has a controlling interest, and its legal representatives, officers, directors, employees, assigns and successors; (2) the Judge to whom this case is assigned and any member of the Judge's staff or immediate family; and (3) Class Counsel. Plaintiff reserves the right to amend the class definitions as necessary.

128. The Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality and adequacy because:

129. **Numerosity**: Class members are so numerous that joinder of all members is impracticable. Plaintiff believes that there are thousands of consumers who are Class members that have been damaged by Target's deceptive and misleading practices.

130. **Commonality**: The questions of law and fact common to the Class members, which predominate over any questions that may affect individual Class members include, but are not limited to:

    a. Whether Target is responsible for the conduct alleged herein, which was uniformly directed at all consumers who purchased the Tuna Products;

    b. Whether Target's misconduct set forth in this Complaint demonstrates that Target has engaged in unfair, fraudulent or unlawful business practices with respect to the advertising, marketing and sale of its Tuna

1053400.3

CLASS ACTION COMPLAINT

Products;

c. Whether Target made false and/or misleading statements to the Classes and the public concerning its Tuna Products;

d. Whether Target's false and misleading statements concerning its Tuna Products were likely to deceive the public;

e. Whether Plaintiff and the Classes are entitled to money damages and/or restitution under the same causes of action as the other Class members and, if so, the amount of such damages or restitution;

f. Whether injunctive relief is appropriate under the circumstances; and

g. Whether Plaintiff and other Class members are entitled to declaratory or other equitable relief.

131. **Typicality**: Plaintiff is a member of the Class. Plaintiff's claims are typical of the claims of each Class member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased Target's Tuna Products. Plaintiff is entitled to relief under the same causes of action as the other Class members.

132. **Adequacy**: Plaintiff Kim is an adequate Class representative because her interests do not conflict with the interests of the Class members she seeks to represent; her consumer protection claims are common to all members of the Class and she has a strong interest in vindicating their rights; she has retained counsel that is competent and experienced in complex class action litigation and she intends to vigorously prosecute this action.

133. **Predominance**: Pursuant to rule 23(b)(3), the common issues of law and fact identified above predominate over any other questions affecting only individual members of the Class. The Class issues fully predominate over any individual issue because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Target's deceptive and misleading marketing and labeling practices.

134. **Superiority**: A class action is superior to other available methods for the

1053400.3

fair and efficient adjudication of this controversy because:

a. The joinder of thousands of individual Class members is impracticable, cumbersome, unduly burdensome and a waste of judicial and/or litigation resources;

b. The individual claims of the Class members may be relatively modest compared with the expense of litigating the claim, thereby making it impracticable, unduly burdensome, and expensive—if not totally impossible—to justify individual actions;

c. When Target's liability has been adjudicated, all Class members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery and trial of all individual cases;

d. This class action will promote orderly, efficient, expeditious and appropriate adjudication and administration of Class claims;

e. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

f. This class action will assure uniformity of decisions among Class members;

g. The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

h. Class members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by a single class action; and

i. It would be desirable to concentrate in this single venue the litigation of all plaintiffs who were induced by Target's uniform false marketing and advertising to purchase its Tuna Products as being sustainably caught.

135. Accordingly, this Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class

1053400.3

members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

## CLAIMS FOR RELIEF

## COUNT I

**VIOLATION OF STATE CONSUMER PROTECTION STATUTES**

***(By Plaintiff, individually, and on behalf of the Multi-State Consumer Protection Class)***

136. Plaintiff, individually, and on behalf of the Multi-State Consumer Protection Class, realleges paragraphs 1 through 135 as if fully set forth herein.

137. Plaintiff and the Multi-State Consumer Protection Class members were injured as a result of Defendant's violations of the state consumer protection statutes listed in paragraph 125, footnote 77, above. These state consumer protection statutes provide a basis for redress to Plaintiff and the Multi-State Consumer Protection Class based on Defendant's fraudulent, deceptive, unfair and unconscionable acts, practices and conduct.

138. Defendant's conduct, as alleged herein, violates the consumer protection, unfair trade practices and deceptive laws of each of the jurisdictions encompassing the Multi-State Consumer Protection Class.

139. Defendant's marketing of the Tuna Products violates these prohibitions by deceiving consumers into believing that the Tuna Products are sustainably caught when they are not.

140. Defendant engaged in fraudulent and/or deceptive conduct which creates the likelihood of confusion or misunderstanding in violation of applicable law.

141. Specifically, Defendant advertised, in a misleading and deceptive manner, that the Tuna Products are sustainably caught. Defendant chose to package, label and market the Tuna Products in this way to impact consumer choices, extract price premiums and gain market dominance, as it is aware that all reasonable

1053400.3

CLASS ACTION COMPLAINT

consumers who purchase the Tuna Products would be impacted by, and would reasonably believe, its false and misleading representations.

142. Defendant intended for Plaintiff and Multi-State Consumer Protection Class members to reasonably rely upon the material misrepresentations concerning the true nature of the Tuna Products.

143. Defendant's misrepresentations and other deceptive conduct were likely to deceive and cause misunderstanding and/or, in fact, did cause Plaintiff and Multi-State Consumer Protection Class members to be deceived about the true nature of the Tuna Products.

144. As a direct and proximate result of Defendant's misrepresentations, Plaintiff and Multi-State Consumer Protection Class members suffered ascertainable losses.

145. Had they been aware of the true nature of the Tuna Products, Plaintiff and Multi-State Consumer Protection Class members either would have paid less for the Tuna Products or would not have made the purchases at all.

146. Pursuant to the aforementioned states' unfair and deceptive practices laws, Plaintiff and Multi-State Consumer Protection Class members are entitled to recover compensatory, restitution, punitive and special damages, including, but not limited to treble damages, reasonable attorneys' fees and costs and other injunctive or declaratory relief as deemed appropriate or permitted by relevant law.

## COUNT II

### CALIFORNIA UNFAIR COMPETITION LAW

### Violation of Cal. Bus. & Prof. Code §§ 17200, *et seq.*

### *(By Plaintiff, individually, and on behalf of the California Class)*

147. Plaintiff Kim, individually, and on behalf of the California Class, realleges paragraphs 1 through 135 as if fully set forth herein.

148. The Defendant is a "person" as defined by the California Unfair Competition Law, California Business and Professions Code § 17201 (the "UCL").

1053400.3

149. Plaintiff and California Class members suffered an injury by virtue of buying Tuna Products that Defendant misrepresented. Had Plaintiff and California Class members known that Defendant materially misrepresented the true sustainability of the Tuna Products, they would not have purchased, or would have paid less for, the Tuna Products.

150. Defendant's conduct, as alleged herein, violates the laws and public polices of California and the federal government including the California Consumers Remedy Act, California Civil Code sections 1750, *et seq*. (the "CLRA") , the California False Adverting Law, 21 C.F.R. § 101.9 (the "FAL"), and California's Sherman Law.

151. There is no benefit to consumers or competition in allowing Defendant to deceptively label, market and advertise the Tuna Products.

152. Plaintiff and California Class members had no way of reasonably knowing that the Tuna Products were deceptively packaged, marketed and advertised. Therefore, Plaintiff and California Class members could not reasonably avoid the harm they suffered.

153. Specifically, Defendant marketed, labeled and represented the Tuna Products as being sustainably caught when in fact, they were not.

154. The gravity of the harm suffered by Plaintiff and California Class members outweighs any legitimate justification, motive or reason for packaging, marketing, advertising and labeling the Tuna Products in a deceptive and misleading manner. Accordingly, Defendant's actions not only offend the established public policies set forth in federal regulations, but its conduct is also immoral, unethical and unscrupulous.

155. Defendant's dissemination of misleading and deceptive statements to consumers throughout the State of California did, and will continue to, deceive reasonable consumers, like Plaintiff and California Class members, by obfuscating the true nature of the Tuna Products. Defendant's conduct is thus a violation of Cal.

1053400.3

Bus. & Prof. Code §§ 17500, *et seq*.

156.   Plaintiff and California Class members do not have an adequate remedy at law because damages alone will not stop Defendant's unlawful sale of the Tuna Products, or its misrepresentations. Damages will only address past injuries suffered by Plaintiff and California Class members, but Defendant continues to market the Tuna Products without disclosing the true nature and unsustainable fishing methods utilized to catch the Tuna Products. Therefore, only injunctive relief can prevent future harm.

157.   Additionally, Plaintiff seeks restitution if monetary damages are not available. Restitution under the UCL can be awarded in situations where the entitlement of damages may prove difficult. *Cortez v. Purolator Air Filtration Products Co*., 23 Cal.4th 163, 177 (2000) (Restitution under the UCL can be awarded "even absent individualized proof that the claimant lacked knowledge of the overcharge when the transaction occurred."); *Gutierrez v. Wells Fargo Bank, NA*, 589 F. App'x 824, 827 (9th Cir. 2014) (same); *Caro v. Procter & Gamble Co*., 18 Cal. App. 4th 644, 661 (1993) ("In a suit arising under Bus. & Prof. Code, §§ 17200, *et seq.* (unfair competition), the court is empowered to grant equitable relief, including restitution in favor of absent persons, without certifying a class action.").

158.   But even if damages were available, such relief would not be adequate to address the injury suffered by Plaintiff and California Class members. Unlike damages, the Court's discretion in fashioning equitable relief is very broad. *Cortez*, 23 Cal.4th at 180. Thus, restitution would allow recovery even when normal consideration associated with damages would not. *See, e.g., Fladeboe v. Am. Isuzu Motors Inc*., 150 Cal. App. 4th 42, 68 (2007), *as modified* (Apr. 24, 2007) (noting that restitution is available even in situations where damages may not be available).

159. Plaintiff and California Class members seek all monetary and nonmonetary relief allowed by law, including restitution stemming from Defendant's unfair, unlawful and fraudulent business practices; declaratory relief; reasonable

1053400.3

attorneys' fees and costs under California Code of Civil Procedure § 1021.5; injunctive relief; and other appropriate equitable relief.

## I.    "Unfair" Prong

160.    **Unfair Standard**. Under the UCL, a challenged activity is "unfair" when "any injury it causes outweighs any benefits provided to consumers and the injury is one that the consumers themselves could not reasonably avoid." *Camacho v. Auto Club of S. Cal.*, 142 Cal. App. 4th 1394, 1403 (2006).

161.    **Injury**. Defendant's practice of labeling the Tuna Products with the Sustainability Promise despite the unsustainable fishing methods utilized to catch the Tuna Products, provides no benefit to consumers; rather, it harms them. By misrepresenting this material information, Defendant causes consumers to purchase Tuna Products that fail to meet their reasonable expectations, overpay for Tuna Products they believed were fit for their marketed use and receive Tuna Products that were not sustainably caught. Consumers are deprived of the ability to make informed decisions and cannot avoid the injuries caused by Defendant's deceptive labeling and advertising. Accordingly, the injuries resulting from Defendant's deceptive conduct far outweigh any purported benefits.

162.    **Balancing Test**. Some courts conduct a balancing test to decide if a challenged activity amounts to unfair conduct under California Business and Professions Code Section 17200. They "weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012).

163.    **No Utility**. Here, Defendant's conduct of labeling the Tuna Products with the Sustainability Promise despite the unsustainable fishing methods utilized to catch the Tuna Products, has no legitimate utility and financially harms consumers. Any potential utility from Defendant's conduct is vastly outweighed by the gravity of the harm caused to consumers, who are unknowingly receiving Tuna Products that were caught utilizing unsustainable fishing methods that harm the marine wildlife and

1053400.3

ecosystem and that fail to meet their reasonable expectations of sustainable products.

164.　**Legislative Declared Policy**. Some courts require that "unfairness must be tethered to some legislative declared policy or proof of some actual or threatened impact on competition." *Lozano v. AT&T Wireless Servs. Inc.*, 504 F.3d 718, 735 (9th Cir. 2007). Defendant's use of the Sustainability Promise despite the fact that the Tuna Products are caught utilizing unsustainable fishing methods, violates California Civil Code sections 1572 (actual fraud), 1573 (constructive fraud), 1709-1710 (fraudulent deceit) and 1711 (deceit upon the public), as set forth herein.

165.　**Unfair Conduct**. Defendant's labeling and advertising of the Tuna Products, as alleged herein, is deceptive, misleading and unreasonable, and constitutes unfair conduct. Defendant knew, or should have known, of its unfair conduct. Defendant's labeling and marketing of the Tuna Products with the Sustainability Promise despite the unsustainable fishing methods utilized to catch the Tuna Products, constitutes an unfair business practice within the meaning of California Business and Professions Code Section 17200.

166.　**Reasonably Available Alternatives**. Reasonably available alternatives existed that would have allowed Defendant to further its legitimate business interests without engaging in the deceptive conduct described herein. Defendant could have refrained from labeling the Product with the Sustainability Promise. This reasonable alternative would allow Defendant to market its Tuna Products truthfully while protecting consumers from consuming a product that harms the marine wildlife and ecosystem in a manner they were seeking to avoid.

167.　**Defendant's Wrongful Conduct**. All of the conduct alleged herein occurs, and continues to occur, in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

168.　**Injunction**. Pursuant to Business and Professions Code Section 17203, Plaintiff and the California Class seek an order from this Court enjoining Defendant

1053400.3

CLASS ACTION COMPLAINT

from continuing its practice of labeling the Tuna Products with the Sustainability Promise. Plaintiff and the California Class request that the Court prohibit Defendant from engaging in these deceptive practices to prevent further harm to consumers.

169. **Causation/Damages**. Plaintiff and the California Class suffered injury in fact, lost money and purchased the Tuna Products that was not as marketed as a result of Defendant's unfair conduct. Plaintiff and the California Class paid an unwarranted premium for the Tuna Products, believing they were fit for their marketed purpose and were sustainably caught. Specifically, Plaintiff and the California Class paid for Tuna Products they reasonably believed were sustainably caught and did not utilize fishing methods that harmed the marine wildlife and ecosystem. Had they known the truth, that the Tuna Products were not sustainably caught, Plaintiff and the California Class would not have purchased the Tuna Products, or would have paid substantially less for them. Accordingly, Plaintiff and the California Class seek damages, restitution and/or disgorgement of ill-gotten gains pursuant to the UCL.

## II.    "Fraudulent" Prong

170. **Fraud Standard**. The UCL considers conduct fraudulent (and prohibits said conduct) if it is likely to deceive members of the public. *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1267 (1992).

171. **Fraudulent Sustainability Claim**. Defendant employed the Sustainability Promise, with the intent to sell the Tuna Products to consumers, including Plaintiff and the California Class. The Sustainability Promise is deceptive, and Defendant knew, or should have known, of its deceptive nature. By affirmatively representing the Tuna Products with the Sustainability Promise despite the unsustainable fishing methods utilized to catch the Tuna Products, Defendant misleads consumers into believing the Tuna Products are fit for their intended use. The affirmative misrepresentations are likely to mislead reasonable consumers, as they pertain to fitness for the marketed use, which is material to the purchasing

1053400.3

decisions of the average, ordinary and reasonable consumer.

172. **Fraudulent Business Practice**. As alleged herein, the misrepresentation by Defendant constitutes a fraudulent business practice in violation of California Business & Professions Code Section 17200.

173. **Reasonable and Detrimental Reliance**. Plaintiff and the California Class reasonably and detrimentally relied on Defendant's representation that the Tuna Products were sustainably caught to their detriment in that they purchased the Tuna Products.

174. **Reasonably Available Alternatives**. Reasonably available alternatives existed that allow Defendant to further its legitimate business interests without engaging in the deceptive conduct described herein. Defendant could have refrained from labeling the Tuna Products with the Sustainability Promise. This reasonable alternative allows Defendant to market its Tuna Products truthfully while protecting consumers from consuming Tuna Products that are not as marketed.

175. **Business Practice**. All of the conduct alleged herein occurs, and continues to occur, in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct.

176. **Injunction**. Pursuant to Business and Professions Code Section 17203, Plaintiff and the California Class seek an order from this Court enjoining Defendant from continuing its practice of labeling the Tuna Products with the Sustainability Promise. Plaintiff and the California Class request that the Court prohibit Defendant from engaging in these deceptive practices to prevent further harm to consumers.

177. **Causation/Damages**. Plaintiff and the California Class suffered injury in fact, lost money and purchased the Tuna Products that was not as marketed as a result of Defendant's fraudulent conduct. Plaintiff and the California Class paid an unwarranted premium for the Tuna Products, believing they were fit for their marketed purpose and were sustainably caught. Specifically, Plaintiff and the California Class paid for Tuna Products they reasonably believed were sustainably

1053400.3

caught utilizing fishing methods that did not harm the marine wildlife and ecosystem. Had they known the truth, that the Tuna Products were not sustainably caught, Plaintiff and the California Class would not have purchased the Tuna Products, or would have paid substantially less for them. Accordingly, Plaintiff and the California Class seek damages, restitution and/or disgorgement of ill-gotten gains pursuant to the UCL.

**III.   "Unlawful" Prong**

178.   **Unlawful Standard**. The UCL identifies violations of other laws as "unlawful practices that the unfair competition law makes independently actionable." *Velazquez v. GMAC Mortg. Corp.*, 605 F. Supp. 2d 1049, 1068 (C.D. Cal. 2008).

179.   **Violations of CLRA and FAL**. Defendant's labeling of the Tuna Products, as alleged herein, violates the CLRA and FAL as set forth in the sections regarding those causes of action.

180.   **Fraud**. Additionally, Defendant's use of the Sustainability Promise and MSC Blue Tick despite the fact that the Tuna Products were unsustainably caught, to sell the Tuna Products violates California Civil Code sections 1572 (actual fraud), 1573 (constructive fraud), 1709-1710 (fraudulent deceit) and 1711 (deceit upon the public), as set forth herein.

181.   **Additional Violations**. Defendant's conduct in making the false representations described herein constitutes a knowing failure to adopt policies in accordance with and/or adherence to applicable laws, as set forth herein, all of which are binding upon and burdensome to its competitors. This conduct engenders an unfair competitive advantage for Defendant, thereby constituting an unfair, fraudulent and/or unlawful business practice under California Business & Professions Code sections 17200-17208. Additionally, Defendant's misrepresentation of material fact, as set forth herein, violates California Civil Code sections 1572, 1573, 1709, 1710, 1711 and 1770, as well as the common law.

182.   **Unlawful Conduct**. Defendant's packaging, labeling and advertising of

1053400.3

47

CLASS ACTION COMPLAINT

the Tuna Products, as alleged herein, is deceptive, misleading and unreasonable, and constitutes unlawful conduct. Defendant knew, or should have known, of its unlawful conduct.

183. **Reasonably Available Alternatives**. Reasonably available alternatives exist that would allow Defendant to further its legitimate business interests without engaging in the deceptive conduct described herein. Defendant could have refrained from labeling the Tuna Products with the Sustainability Promise. This reasonable alternative allows Defendant to market its Tuna Products truthfully while protecting consumers from consuming Tuna Products that are not as marketed.

184. **Business Practice**. All of the conduct alleged herein occurs, and continues to occur, in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct.

185. **Injunction**. Pursuant to Business and Professions Code Section 17203, Plaintiff and the California Class seek an order from this Court enjoining Defendant from continuing its practice of labeling the Tuna Products with the Sustainability Promise. Plaintiff and the California Class request that the Court prohibit Defendant from engaging in these deceptive practices to prevent further harm to consumers.

186. **Causation/Damages**. Plaintiff and the California Class suffered injury in fact, lost money and purchased unsustainable Tuna Products as a result of Defendant's unlawful conduct. Plaintiff and the California Class paid an unwarranted premium for the Tuna Products, believing they were fit for their marketed purpose and were sustainably caught. Specifically, Plaintiff and the California Class paid for Tuan Products they reasonably believed were sustainably caught. Had they known the truth, that the Tuna Products were caught utilizing unsustainable fishing methods that harm the marine wildlife and ecosystem, Plaintiff and the California Class would not have purchased the Tuna Products, or would have paid substantially less for them. Accordingly, Plaintiff and the California Class seek damages, restitution and/or disgorgement of ill-gotten gains pursuant to the UCL.

1053400.3

CLASS ACTION COMPLAINT

**COUNT III**

**CALIFORNIA FALSE ADVERTISING LAW**

**Violation of Cal. Bus. & Prof. Code §§ 17500, *et seq.***

(***By Plaintiff, individually, and on behalf of the California Class***)

187. Plaintiff Kim, individually, and on behalf of the California Class, realleges paragraphs 1 through 135 as if fully set forth herein.

188. Defendant's conduct constitutes deceptive or false advertising in violation of California Business and Professions Code § 17500.

189. The FAL provides that "[i]t is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services" to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

190. Defendant marketed, labeled and represented the Tuna Products with the Sustainability Promise, despite the use of unsustainable fishing methods to catch the Tuna Products that harm the marine wildlife and ecosystem.

191. At the time of its misrepresentations, Defendant was either aware that the Tuna Products were not sustainably caught, or was aware that it lacked the information and/or knowledge required to make such representations truthfully.

192. Defendant's descriptions of the Tuna Products are false, misleading and likely to deceive reasonable consumers, like Plaintiff and California Class members.

193. Defendant's conduct therefore constitutes deceptive or misleading advertising.

194. Plaintiff has standing to pursue claims under the FAL because she reviewed and relied on Defendant's packaging, labeling, advertising and representations regarding the Tuna Products when selecting and purchasing them.

195. In reliance on the statements made by Defendant through its labeling and advertising, as well as Defendant's misrepresentation of material facts regarding the

1053400.3

49

CLASS ACTION COMPLAINT

Tuna Products, Plaintiff and California Class members purchased the Tuna Products.

196. Had Defendant disclosed the true nature of the Tuna Products (that unsustainable fishing methods are utilized to catch the tuna), Plaintiff and California Class members would not have purchased the Tuna Products or would have paid substantially less for them.

197. As a direct and proximate result of Defendant's actions, Defendant received ill-gotten gains and/or profits, including but not limited to remuneration from Plaintiff and California Class members for the Tuna Products.

198. Plaintiff and California Class members do not have an adequate remedy at law because damages alone will not stop Defendant's unlawful sale of the Tuna Products, or its misrepresentations. Damages will only address past injuries suffered by Plaintiff and California Class members, but Defendant continues to market the Tuna Products without disclosing the true nature. Therefore, only injunctive relief can prevent future harm.

199. Plaintiff and California Class members seek all monetary and nonmonetary relief allowed by law, including restitution stemming from Defendant's fraudulent business practices; declaratory relief; reasonable attorneys' fees and costs under California Code of Civil Procedure § 1021.5; injunctive relief; and other appropriate equitable relief.

## COUNT IV

### CALIFORNIA CONSUMERS LEGAL REMEDIES ACT

**Violation of Cal. Civ. Code. §§ 1750, *et seq*.**

**(*By Plaintiff, individually, and on behalf of the California Class*)**

200. Plaintiff Kim, individually, and on behalf of the California Class, realleges paragraphs 1 through 135 as if fully set forth herein.

201. The conduct described herein took place in the State of California and constitutes unfair methods of competition or deceptive acts or practices in violation of the CLRA, Civil Code §§ 1750, *et seq*.

1053400.3

CLASS ACTION COMPLAINT

202. The CLRA applies to all claims of all California Class members because the conduct, which constitutes violations of the CLRA by Defendant, occurred within the State of California.

203. Plaintiff and California Class members are "consumers" as defined by Civil Code § 1761(d).

204. Defendant is a "person" as defined by Civil Code § 1761(c).

205. The Tuna Products qualify as "goods" as defined by Civil Code § 1761(a).

206. Plaintiff's and California Class members' purchases of the Tuna Products are "transactions" as defined by Civil Code § 1761(e).

207. As set forth below, the CLRA deems the following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which does result in the sale or lease of goods or services to any consumer as unlawful:

(a) "Representing that goods … have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have." Civil Code § 1770(a)(5);

(b) "Representing that goods … are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." Civil Code § 1770(a)(7);

(c) "Advertising goods or services with intent not to sell them as advertised." Civil Code § 1770(a)(9); and

(d) "Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not." Civil Code § 1770(a)(16).

208. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Civil Code §§ 1770(a)(5), (a)(7), (a)(9) and (a)(16) by representing, through its Tuna Products' labeling, advertising and other express

1053400.3

51

CLASS ACTION COMPLAINT

representations, that the Tuna Products have benefits or characteristics that they do not actually have.

209. Defendant repeatedly engaged in conduct deemed a violation of the CLRA and made misrepresentations regarding the Tuna Products' benefits or characteristics by advertising the Tuna Products with the Sustainability Promise.

210. The Tuna Products are caught utilizing fishing methods that harm the marine wildlife and ecosystem, yet Defendant violated the CLRA by falsely representing that the Tuna Products are sustainably caught.

211. In addition, Defendant violated the CLRA when it advertised the Tuna Products with the intent to sell, while knowing the Tuna Products do not possess the represented sustainable qualities.

212. Defendant's deceptive practices were particularly designed to induce Plaintiff and California Class members to purchase, or otherwise acquire, the Tuna Products.

213. Defendant engaged in uniform marketing efforts to reach California Class members to persuade them to purchase and use the Tuna Products. Defendant's labeling, packaging, advertising and marketing contain false and misleading statements regarding the sustainability of the Tuna Products.

214. In their purchase of the Tuna Products, Plaintiff and California Class members relied on Defendant's representations of material facts.

215. Plaintiff and other California Class members were financially injured in that they paid more for the Tuna Products than they otherwise would have had they known the truth about them.

216. Accordingly, pursuant to Civil Code § 1780(a)(2), Plaintiff, on behalf of herself and all other members of the Class, seek injunctive relief, including an order to enjoin Defendant from continuing its deceptive advertising and sale practices.

217. Pursuant to Cal. Civ. Code § 1782, on August 4, 2025, Plaintiff notified Defendant in writing by certified mail of its violations of § 1770 described above and

1053400.3

demanded that it rectify its conduct on a class-wide basis.

218. Pursuant to Cal. Civ. Code § 1780(d), a declaration of venue is attached to this Complaint.

## COUNT V

## UNJUST ENRICHMENT/QUASI-CONTRACT

### (*By Plaintiff, individually, and on behalf of the California Class*)

219. Plaintiff Kim, individually, and on behalf of the California Class, realleges paragraphs 1 through 135 as if fully set forth herein.

220. As set forth in this Complaint, Defendant's unfair and unlawful conduct includes, among other things, making materially false and misleading representations about the sustainability of the Tuna Products. Defendant's acts and business practices offend the established public policy of California, as well as federal law, and there is no public benefit that comes from such false labeling and advertising—only harm.

221. While Plaintiff and Class members were harmed at the time of purchase, Defendant was unjustly enriched by its misrepresentations. As a result of Defendant's unlawful, unfair and fraudulent business practices, Plaintiff and Class members suffered injury.

222. To Defendant's benefit and enrichment, it knowingly realized substantial revenue from selling the Tuna Products at the expense of, and to the detriment of, Plaintiff and Class members. Defendant's retention of these benefits violates fundamental principles of justice, equity and good conscience.

223. Plaintiff and the Class members conferred significant financial benefits and paid substantial compensation to Defendant for the Tuna Products, which were not as Defendant represents.

224. Under common law principles of unjust enrichment and quasi-contract, it is inequitable for Defendant to retain the benefits conferred by Plaintiff's and Class members' overpayments.

225. As such, Plaintiff and Class members seek disgorgement of all profits

1053400.3

resulting from such overpayments and the establishment of a constructive trust from which Plaintiff and Class members may seek restitution.

**COUNT VI**

**BREACH OF CALIFORNIA'S IMPLIED WARRANTIES LAWS**

***(By Plaintiff, individually, and on behalf of the California Class)***

226. Plaintiff Kim, individually, and on behalf of the California Class, realleges paragraphs 1 through 135 as if fully set forth herein.

**I.    Implied Warranty of Merchantability**

227. California's implied warranty of merchantability statute states that "a warranty that [] goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Cal. Com. Code § 2314(1). "Merchantable" goods must be "fit for the ordinary purposes for which the goods are used." Cal. Com. Code § 2314(2)(c). Moreover, "Merchantable" goods must "[c]onform to the promises or affirmations of fact made on the container or label[.]" Cal. Com. Code § 2314(2)(f).

228. Defendant is, and was, at all relevant times, a merchant with respect to the Tuna Products described herein. The Tuna Products constitute a "good" under § 2314.

229. Plaintiff and Class members purchased the Tuna Products.

230. As the manufacturer of the Tuna Products, Defendant impliedly warranted to Plaintiff and Class members that the Tuna Products were of merchantable quality.

231. However, when sold, and at all times thereafter, the Tuna Products were not in merchantable condition as the Tuna Products did not conform to the promise and affirmation of fact on the label—that they were sustainably caught. Specifically, as described in greater detail herein, the Tuna Products were caught utilizing unsustainable fishing methods that indisputably harm the marine wildlife and ecosystem. This makes the Tuna Products unfit for their ordinary use and purpose,

1053400.3

CLASS ACTION COMPLAINT

and the Tuna Products fail to conform to the promise and affirmation of fact on the labels.

232.   As a result, Defendant breached the implied warranty of merchantability in connection with the sale and distribution of the Tuna Products.

233.   Plaintiff's counsel provided Defendant with notice of this breach by mailing a notice letter to Defendant's headquarters on August 4, 2025.

234.   Plaintiff and Class members were foreseeable beneficiaries of Defendant's sale of the Tuna Products because they are sold to consumers, such as Plaintiff and Class members.

235.   Defendant's breach directly caused Plaintiff and Class members harm. Plaintiff and Class members were injured as a direct and proximate result of Defendant's conduct because: (1) they would not have purchased the Tuna Products if they had known the truth; (2) they overpaid for the Tuna Products sold at a premium price based on Defendant's misrepresentations; and/or (3) the Tuna Products they received are not sustainably caught and thus worthless for their intended purpose.

## II.   Implied Warranty of Fitness

236.   California's implied warranty of fitness statute states that where a seller "has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose." Cal. Com. Code § 2315.

237.   Plaintiff and Class members purchased the Tuna Products for their intended purpose as sustainably caught Tuna Products.

238.   Defendant knew, or had reason to know, that Plaintiff and Class members purchased the Tuna Products for this particular purpose. Defendant represents to consumers on the Tuna Products' labels and in its marketing that the Tuna Products are sustainably caught and is aware that consumers purchase the Product for that intended use.

1053400.3

CLASS ACTION COMPLAINT

239. Defendant knew, or had reason to know, that Plaintiff and Class members would justifiably rely on Defendant's marketed judgment and knowledge of Tuna Products and the sustainability of the fishing methods utilized to catch those Tuna Products in selecting or purchasing sustainable Tuna Products.

240. Plaintiff and Class members justifiably relied on Defendant's judgment and skill, but the Tuna Products are not suitable for their intended purpose because they are not sustainably caught as labeled and advertised.

241. Therefore, Defendant breached its implied warranty of fitness concerning the Tuna Products.

242. Plaintiff's counsel provided Defendant with notice of this breach by mailing a notice letter to Defendant's headquarters on August 4, 2025.

243. Plaintiff and Class members were foreseeable beneficiaries of Defendant's sale of the Tuna Products because they are sold to consumers, such as Plaintiff and Class members.

244. Defendant's breach directly caused Plaintiff and Class members harm. Plaintiff and Class members were injured as a direct and proximate result of Defendant's conduct because: (1) they would not have purchased the Tuna Products if they had known the truth; (2) they overpaid for the Tuna Products sold at a premium price based on Defendant's misrepresentations; and/or (3) the Tuna Products they received are not sustainably caught and thus worthless for their intended purpose.

**COUNT VII**

**BREACH OF CALIFORNIA'S EXPRESS WARRANTY LAWS**

***(By Plaintiff, individually, and on behalf of the California Class)***

245. Plaintiff Kim, individually, and on behalf of the California Class, realleges paragraphs 1 through 135 as if fully set forth herein.

246. As alleged in detail above, Defendant makes, markets and sells the Tuna Products.

247. California's express warranty statute provides that "(a) [a]ny affirmation

1053400.3

CLASS ACTION COMPLAINT

of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise," and "(b) [a]ny description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." Cal. Com. Code § 2313.

248. Defendant markets the Tuna Products to consumers as sustainably caught Tuna Products. Specifically, Defendant's Tuna Products' labels represent that they are sustainably caught using sustainable practices to help protect ocean resources for future generations to enjoy. These statements are affirmations of fact about the Tuna Products, *i.e.*, a representation that the Tuna Products are sustainably caught.

249. However, the Tuna Products do not conform to this express representation because the Tuna Products are not sustainably caught.

250. Defendant's warranty was part of the basis of the bargain, and Plaintiff and Class members saw and relied upon as a warranty.

251. Plaintiff's counsel provided Defendant with notice of this breach by mailing a notice letter to Defendant's headquarters on August 4, 2025.

252. Defendant's breach directly caused Plaintiff and Class members harm. Plaintiff and Class members were injured as a direct and proximate result of Defendant's conduct because: (1) they would not have purchased the Tuna Products if they had known the truth; (2) they overpaid for the Tuna Products sold at a premium price based on Defendant's misrepresentations; and/or (3) the Tuna Products they received are not sustainably caught and thus less valuable than what they paid for.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of herself and the Class, prays for judgment as follows:

1. Declaring this action to be a proper class action and certifying Plaintiff as the representative of the Class under Rule 23 of the Federal Rules of Civil Procedure;

1053400.3

2.    Awarding monetary damages, including treble damages and statutory damages;

3.    Awarding punitive damages;

4.    Providing for any and all injunctive relief the Court deems appropriate;

5.    Awarding Plaintiff pre-judgment interest and post-judgment interest, to the extent permitted by law;

6.    Awarding Plaintiff and Class members their costs and expenses incurred in this action, including reasonable allowance of fees for Plaintiff's attorneys and experts and reimbursement of Plaintiff's expenses; and

7.    Granting such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

DATED:  March 18, 2026         By:    _/s/ Michael H. Pearson_
                                              MICHAEL H. PEARSON

MICHAEL H. PEARSON (CA SBN 277857)
**PEARSON WARSHAW, LLP**
15165 Ventura Boulevard, Suite 400
Sherman Oaks, CA 91403
Telephone: (818) 788-8300
Facsimile: (818) 788-8104
mpearson@pwfirm.com

MELISSA S. WEINER*
RYAN T. GOTT*
**PEARSON WARSHAW, LLP**
328 Barry Avenue South, Suite 200
Wayzata, Minnesota 55391
Telephone: (612) 389-0600
Facsimile: (612) 389-0610
mweiner@pwfirm.com
rgott@pwfirm.com

1053400.3

CLASS ACTION COMPLAINT

CHRISTOPHER JENNINGS*
TYLER EWIGLEBEN*
**JENNINGS & EARLEY, PLLC**
500 President Clinton Avenue, Suite 110
Little Rock, AR 72201
Telephone: (501) 255-8569
Facsimile: (501) 344-6161
chris@jefirm.com
tyler@jefirm.com

*Attorneys for Plaintiff and Putative Class*

*Pro Hac Vice* Forthcoming

1053400.3

59
CLASS ACTION COMPLAINT